```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGELO GRACE,                                         :

                        Petitioner,                   :

                -against-                             :   REPORT AND RECOMMENDATION

                                                      :   09 Civ. 7943 (LTS)(KNF)
ATTORNEY GENERAL OF NEW YORK STATE,
                                                      :
                        Respondent.                   :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

*Pro se* petitioner Angelo Grace ("Grace") filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree felony murder. Grace asserts his confinement is unlawful because of violations of his: (1) Sixth Amendment right to effective assistance of counsel, prior to entering a guilty plea; (2) Sixth Amendment right to conflict-free counsel, after he moved to withdraw his plea; and (3) Fourteenth Amendment due process right to be informed of a statutory fee and surcharge, prior to his guilty plea. The respondent opposes the petition.

## BACKGROUND

On May 6, 1999, Grace, Willie Gaymon ("Gaymon"), Conneil Scott ("Scott") and Corey Williams ("Williams") went to the Manhattan apartment of a record producer, Christopher Betts ("Betts"). Gaymon believed that Betts had stolen a piece of music Gaymon had written. To retaliate against Betts, Gaymon and his companions determined to rob Betts of his electronic

1

equipment. In the course of the robbery, Gaymon, using a machete Scott brought into the apartment, beheaded Betts. Grace removed an electronic keyboard from the apartment, while his associates took other property. Grace and Gaymon fled to South Carolina, where they pursued their rap music careers. In 2000, Grace and Gaymon committed a gunpoint robbery of a South Carolina check-cashing establishment. Fingerprints recovered from the Manhattan crime scene led to the arrest of Gaymon, Grace, Scott and Williams. An indictment charging Grace with two counts of second-degree murder, two counts of first-degree robbery, and one count of second-degree robbery was returned by a New York County grand jury.

*Plea Proceeding*

On October 12, 2004, Grace and his counsel, Harold Ramsey, appeared before the trial court for a plea hearing. The court noted that it had previously offered a sentence of 20 years to life imprisonment to Grace, and that defense counsel inquired that morning whether the court would consider imposing that sentence concurrently with the 12 years sentence Grace was serving in South Carolina. The court stated it would not make that particular offer. In light of the effect a trial would have on the victim's family, the effort required to bring out-of-state witnesses to New York and summon jurors for a two week trial, the court offered Grace a plea bargain, whereby, in return for his guilty plea to second-degree murder, the court would agree to impose a sentence of 25 years to life imprisonment, to run concurrently with his South Carolina prison term. The court noted that Grace would receive credit for the 13 months he had been incarcerated in this case, as well as the 2 years he had already served in South Carolina. However, the court cautioned Grace that it would not recommend that he be paroled at his earliest eligibility. The court asked Grace's counsel whether he had an opportunity to discuss the

offer with his client and if Grace needed more time to talk with his counsel or his family about the plea offer. The following pertinent colloquy ensued:

> MR. RAMSEY: He would like some time just a brief moment to speak to his family members.
> THE COURT: He has talked with you?
> MR. RAMSEY: Yes.
> THE COURT: It's about five to eleven now. I've given you a fair amount of time since we began on schedule at 9:45 to talk with your client, during the last hour or so.
> MR. RAMSEY: Also, your Honor, I had an opportunity over the weekend to speak with Mr. Grace about the possible scenarios not being able to make any direct offers from the court but if hypothetically this was available, if that was available. We did discuss the ramifications of what your Honor has offered.
> THE COURT: Okay, thank you, and I understand he wishes to speak with his uncle?
> MR. RAMSEY: Yes.
> THE COURT: I will permit that provided that both his uncle and Mr. Grace comply with the directions of my court officers as they set up the meeting.
> \* \* \*
> THE COURT: The record will reflect that Mr. Grace has had a chance to speak with his uncle and I think another family member. Does your client wish to avail himself to the offer, Mr. Ramsey?
> MR. RAMSEY: I'm sorry, Judge, I was speaking with my client.
> THE COURT: Go ahead.
> (Defendant and his attorney confer.)
> THE COURT: Does he want the offer?
> MR. RAMSEY: Yes, your Honor. At this time my client authorizes me to withdraw his previously entered plea of not guilty and enter a plea of guilty, I believe, it's Count 4.
> THE COURT: Yes, it is.
> MR. RAMSEY: To Murder in the Second Degree felony murder with the understanding that he will receive a sentence of twenty-five years to life to run concurrently with his undischarged South Carolina sentence and that the time relates back to when he began serving time in South Carolina.

The court then asked Grace if he heard what his attorney stated and if that was his choice. Grace responded affirmatively to both questions. Grace stated that he was not under the influence of prescription medication, illegal drugs or alcohol and that he felt well enough to make that

important judgment. The court inquired as follows:

> THE COURT: Have you discussed this case fully with your attorney before you decided to enter this plea?
> THE DEFENDANT: Yes.
> THE COURT: And you also just now had a discussion with one or two of your family members about it as well; is that right?
> THE DEFENDANT: Yes.
> THE COURT: Do you need any more time to discuss this matter with your attorney before you make this important decision?
> THE DEFENDANT: No.
> THE COURT: Are you satisfied with your lawyer's advice?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand, sir, that when you plead guilty you are giving up the following rights, the right to a trial by jury, the right to confront and cross-examine the witnesses against you, the right to offer evidence in your own defense, the right to remain silent, and the right to force the People to prove the charges against you by proof beyond reasonable doubt?
> THE DEFENDANT: Yes.
> THE COURT: Are you pleading guilty voluntarily and of your own free will?
> THE DEFENDANT: Yes.
> THE COURT: Did anyone threaten you or coerce you in order to get you to plead guilty today?
> THE DEFENDANT: No.
> \* \* \*
> THE COURT: Do you understand that had you gone to trial in this case, you could have received a sentence after conviction at trial under this indictment of twenty-five years to life in prison to run consecutively to your South Carolina case?
> THE DEFENDANT: Yes.
> THE COURT: In that event your twenty-five to life would not commence until after you've finished serving your South Carolina sentence, do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that a plea of guilty is the same thing as a conviction after trial?
> THE DEFENDANT: Yes.
> \* \* \*
> THE COURT: Are you pleading guilty because you are in fact guilty of felony Murder Second Degree?
> THE DEFENDANT: Yes.
> THE COURT: Do you believe this plea to be in your own interest under all the circumstances?

        THE DEFENDANT: Yes.

The court accepted the guilty plea.

*Sentencing Proceeding*

      On November 4, 2004, Grace appeared before the court for sentencing. The court noted that it received *pro se* motions from Grace for new counsel to be assigned to him and to withdraw his guilty plea.  The court announced that it intended to ask Grace whether he wanted to say anything in addition to what he submitted in his motion papers. Notwithstanding defense counsel's suggestion that Grace be asked to respond to that question with the assistance of new counsel, the court proceeded to ask Grace whether "there is anything else he has to say."  Grace asserted, in his motion, that his counsel failed to visit him in prison, to discuss the case at length, except for three brief occasions, failed to inform him of pertinent motions made on his behalf, failed to conduct an investigation and failed to make a request for bail.

      Defense counsel then stated he wanted to be certain "that the record is clear that [Grace] is requesting that he have an attorney prior to answering those questions and I just want, so that his rights are protected, [to indicate] that you're asking him these questions without the assistance of counsel that he is requesting."  After the court afforded Grace an opportunity to provide any additional explanation concerning his motions, it denied his motion for new counsel, because it found that his counsel had not provided ineffective assistance to him.  The court also denied Grace's motion to withdraw his guilty plea.  The court explained that the record indicated Grace was not pressured into accepting the plea bargain and his claim of innocence was contradicted by the statements he made, under oath, at the time he tendered his guilty plea.

Thereafter, the court imposed the promised sentence of 25 years to life imprisonment, to run concurrently with the sentence Grace was serving in South Carolina and directed Grace to pay the mandatory surcharge and crime-victim-assistance fee of $155.

*Post-Conviction Proceedings*

On direct appeal to the New York State Supreme Court, Appellate Division, First Department, Grace argued that: (1) his right to counsel was violated by the court's failure to assign conflict-free counsel, after Grace moved *pro se* to withdraw his guilty plea based on an ineffective assistance of counsel claim; and (2) his plea should be vacated, because the court did not inform him of the mandatory surcharge and crime-victim-assistance fee, during the plea proceeding.  The Appellate Division found that the trial court denied properly Grace's "motion to withdraw his plea, without granting the requests made by the defendant and his attorney for substitution of counsel, and [the] defendant was not deprived of his right to conflict-free representation."  People v. Grace, 59 A.D.3d 275, 873 N.Y.S.2d 67, 68 (App. Div. 1st Dep't 2009).  The Appellate Division stated that Grace's claims of coercion and ineffective assistance of counsel were unsubstantiated and refuted by the record of the plea proceeding, which established that extensive discussions led to the plea, Grace declined the court's offer for more time to confer with counsel or family members and he expressed satisfaction with counsel's representation.  According to the Appellate Division, the court already knew the information counsel provided during the plea proceeding, such as that before entering the plea, Grace possessed a transcript of a co-defendant's trial.  Furthermore, the Appellate Division found that statements made by Grace's counsel, about his own actions, did not contain any damaging factual information.  Moreover, the Appellate Division noted that "[t]he record also establishes

that counsel provided effective assistance" where he "negotiated a disposition that was as favorable as possible under the circumstances, whereby the sentence would be concurrent with a lengthy existing sentence." Id. at 276, 873 N.Y.S.2d at 68-69.  It also concluded that Grace was not entitled to *vacatur* of his plea based on the court's failure to inform him of the mandatory surcharge and fee because "[i]nformation about fees and surcharges is not the type of information that is essential for a pleading defendant to have 'in order to knowingly, voluntarily and intelligently choose among alternative courses of action.'" Id. at 276, 873 N.Y.S.2d at 69 (citation omitted).  The New York Court of Appeals denied Grace's request for leave to appeal. See People v. Grace, 12 N.Y.3d 816, 881 N.Y.S.2d 24 (2009).

Grace filed a *pro se* motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law § 440.10(1)(h), alleging his Sixth Amendment rights were violated when his counsel failed to: (1) challenge the sufficiency of the indictment; (2) explain the admissibility of an incriminating statement Grace had made to a potential trial witness; (3) explain his ability to confront witnesses; (4) explain the inadmissibility, at a joint trial, of incriminating statements by a co-defendant; (5) seek severance of his trial from that of Gaymon; and (6) inform Grace of any complete defense to the charged crimes.  The court rejected Grace's claim that his counsel failed to challenge the sufficiency of the indictment, because the record demonstrates that counsel filed a motion to dismiss the indictment, based on insufficient evidence, which the court had denied previously.  To the extent that Grace raised, on direct appeal, his claims that counsel failed to explain the admissibility of incriminating statements and Grace's ability to confront witnesses, the court found these claims were considered, on the merits, and rejected by the Appellate Division.  Alternatively, the court concluded, these claims

have no merit, because they are unsupported by any proof other than Graces's own affidavit, and the record demonstrates Grace: (a) acknowledged that he discussed the case fully with his counsel before entering the plea; (b) was satisfied with his counsel's advice; (c) did not need more time to discuss the potential plea and its ramifications; and (d) acknowledged, at the plea proceeding, that he understood he was forfeiting the right to cross-examine witnesses against him, at trial, by pleading guilty.  The court also found that, to the extent Grace raised, on direct appeal, his claim that counsel failed to explain the inadmissibility, at a joint trial, of incriminating statements by a co-defendant, the claim was rejected on the merits.  Alternatively, the court stated, this claim lacks merit, because the record shows Grace: (i) acknowledged he discussed his case fully with his counsel and was satisfied with counsel's advice; and (ii) was present in court on repeated occasions when the issue of trial severance and the need for redacting Gaymon's statements, at any joint trial, were discussed.  The court found that Grace's claim, that his counsel failed to seek a severance from Gaymon's trial was procedurally barred, because it was not raised on appeal and, alternatively, was baseless, because defense counsel's motion for a separate trial was granted on June 10, 2004, and Gaymon was convicted, after a separate trial.  Grace's claim that his counsel failed to inform him of any complete defense, such as the lack of forensic evidence linking him to the crime, was also rejected by the court.  It found that the claim had been denied previously by the Appellate Division, and Grace failed to explain how the lack of such evidence would have been a complete defense to the charged crimes or to specify any other complete defenses that were available to him.  The court concluded that Grace failed to show that his counsel's assistance fell below an objective standard of reasonableness or to show a reasonable probability that, but for his counsel's errors, he would not have pleaded

guilty or would have received and accepted a more lenient plea offer. Grace's motion to vacate the judgment of conviction was denied, summarily. This petition followed.

## DISCUSSION

*Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme Court]," or if the state court reaches a conclusion different than that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. To prevail under the unreasonable application clause, it is not sufficient to show that the state-court decision is "incorrect or

9

erroneous," the state court's application of the Supreme Court precedent "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166, 1174 (2003).

"[T]he petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). "A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2010) (citing 28 U.S.C. § 2254(e)(1)). A state court adjudicates a constitutional claim on the merits when it: (a) disposes of the claim on substantive grounds; and (b) "reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). No articulation of the state court's reasoning for disposing of the claim is required, as long as a substantive ground is a basis for the disposition. See id.

AEDPA requires a petitioner to exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). This means that "a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

*The Instant Petition*

In support of his habeas corpus petition, Grace repeats the arguments he raised in his direct appeal and his motion to vacate the judgment of conviction. Apart from Grace's recitation of assertions that his constitutional rights have been violated, no attempt has been made by him to identify any governing law or how the Appellate Division's decision on his claims was either

contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  Grace also failed to show that the state court's decision on his claims is grounded on an unreasonable determination of the facts.  He did not present any evidence to the Court that rebuts the presumption of correctness accorded the factual findings made in the state courts respecting his claims.  See 28 U.S.C. § 2254(e)(1).  Therefore, the Court finds that Grace did not meet the burden imposed on him by AEDPA.  Consequently, he is not entitled to habeas corpus relief based on his claims that have been adjudicated on the merits, by the state court.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 755, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
October 18, 2010

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Angelo Grace
Richard Nahas, Esq.